UNITED STATES DISTRICT COURT
EASTREN DISTRICT OF WISCONSIN

Tommie E. Evans,
P.O. Box 1000
Boscobel, WI. 53805

Case No. 19-cv-1650

MOTION FOR LEAVE
TO FILE AN AMENED COMPLAINT
AND AMENED COMPLAINT

**Plaintiff,**

THIRD AMENDED COMPLAINT

v.

Personal Injury / Emotional Distress

Nathan J. Wolf, Jacob R. Dorn, Bobby Blake,
Brian Sonntag, Quinn Warner, all of whom are
employed by Department of Corrections at
Waupun Correctional Institution
**Defendant(s),**

## INTRODUCTION

Here come the plaintiff Evans in the above tittle case move this honorable court to allow plaintiff to amend this complaint to bring the state claim of negligence in accordance with Wisconsin state statue to 28 u.s.c. § 1367.

## I. JURISDICTION

1. The district court has jurisdiction as a civil action arising under the laws of the United States pursuant to 28 U.S.C. § 1331.f state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. 1331 and 1343.

2. The Court has supplemental jurisdiction over Plaintiff's state law claims of negligence that arise under Wisconsin law, pursuant to 28 U.S.C. 1367.

3. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

## II. PARTIES

1. Plaintiff Tommie Evans ("Evans") is a prisoner at Wisconsin Secure Program Facility, and at all times relevant to the allegations of this complaint was a prisoner at Waupun Correctional Institution (WCI) and a citizen of the United States.

2. At all times relevant hereto, defendants were employed by the Department of Corrections (DOC) to perform duties at Waupun Correctional Institution, 200 S. Madison St. P.O Box 351 Waupun, WI. 53963. At all relevant times, defendants were acting in such capacity as the agent, servant, and employee of the Department of Corrections at Waupun

The amended information is locate in paragraph 12.

Correctional Institution (WCI). They are being sued individually and in their official capacity.

3. At all times relevant hereto, defendant Nathan J. Wolf was the duly appointed Sergeant employed by WCI and assigned to the Restrictive Housing Unit (RHU). As such he was the supervisor of defendants; Jacob R. Dorn and Sonntag was responsible for their supervision and conduct. He was also responsible by law for enforcing the regulations of the Department of Corrections and for ensuring that Waupun Correctional Officers obey the laws of the State of Wisconsin and of the United States in providing a safe environment for inmates.

4. At all times relevant hereto, Correctional Officers Sonntag and Jacob R. Dorn were second shift officers in the RHU. Part of their duties were to escort inmates to and from there cells.

5. At all times relevant hereto, defendant Bobby Blake was the duly appointed Sergeant employed by WCI. She was assigned to post and responsible for escorting professional visits, including attorneys, to visiting area. Also responsible by law for enforcing the regulations of Department of Corrections and for ensuring that Waupun Correctional Officers obey the laws of the State of Wisconsin and of the United States in providing a safe environment for inmates.

6. At all-time relevant hereto, Officer Quinn Warner, was the duly appointed officer employed at WCI.

7. At all times relevant hereto and in all their actions described herein, defendants were acting under color of law and pursuant to their authority as WCI personnel.

### III. STATEMENT OF CLAIM

8. On or about December 2, 2016 at approximately 1:15 p.m., while housed in the RHU at WCI, Evans was escorted to a scheduled attorney visit. This visit was held in booth 9, which is one of designated areas for attorney visits. Evans was secured to the attorney booth table with handcuffs. This attorney visit was completed at approximately 2:45 p.m.

9. Upon completion of the attorney visit, Evans immediately notified the control officer, Sgt. Bobby Blake. That the visit was over and he wasn't feeling well, requested that she notify officers to return Evans back to his cell. However, Evans remained in booth 9 handcuffed to the table and it is Evans later found out that Sgt. Bobby Blake ignored his request.

The amended information is locate in paragraph 12.

10. Booth 9 was not equipped with a clock; Evans estimates that after about two hours he began feeling lightheaded and began having panic attacks. Evans began to yell and kick the door in an attempt to get officers attention; this attempt was to no avail. In addition to the panic, Evans' body temperature began to drop as a result of the faulty heating system. Evans estimates that around the third or fourth hour, he lost consciousness.

11. Evans was eventually awoken by Sgt. Nathan Wolf and COs Dorn and Sonntag. Evans noticed wetness along his entire body when he realized that he had urinated himself. He also noticed excruciating pain when attempting to move his right shoulder. In addition, he felt extreme pain in the head and realized that he had suffered a lump to his head as a result of falling when he lost consciousness. Evans remained handcuffed throughout this entire ordeal and at no time did Evans become unruly or combative. Evans estimates that his ordeal of being locked in booth 9 under severe conditions lasted approximately seven hours.

12. Evans was transported directly to Health Services Unit (HSU) where he was seen by Nurse Jennifer Kacyon. Nurse Kacyon made a decision that Evans should be immediately transported to Waupun Memorial Hospital (WMH). Evans was diagnosis with a mild concussion and shoulder sprain with the recommendation for more testing. Later it turn out that Evans had a broken bone in his right shoulder which Evans kept complaining about shoulder pain. This injury was never was sent out for x-rays nor attended to until it was healed. Evans also had to undergo joint replacement surgery due to damage sustained to his rotator cup . WMH treated Evans for injuries to his head and shoulder and also hypothermia. This treatment included, but was not limited to; withdrawing blood from his neck due to his extremely low body temperature and intravenous administration of morphine. Once Evans was medically cleared by the staff of WMH, Evans was to be transported back to WCI.

13. Defendants, Correctional Officers Kevin Sonntag and Jacob R. Dorn, displayed negligence by failing to have Evans transferred back to his cell in a reasonable time, exposed him to a harmful environment after they knew Evans was at risk to harm because officer warner notice them that Evans was calling for help. Their failure to comply with proper procedure and Evans request to return him back to his cell caused serious medical issues to Evans. Evans suffered great pain and suffering, physical injury, personal injury and emotional distress. Correctional Officer Warner stated to Evans that he had notified fellow officers that Evans was yelling and kicking the door in order to alert someone that he was still locked in the room. Because Officers Sonntag and Dorn were the officers on duty in this area at the time, it is Evans was told that these were the fellow officers Warner was referring to. Officers Sonntag and Dorn had a personal responsibility to (at the very least) investigate the nature of Officer Warner's information. Additionally, there were several other protocols available to officers Sonntag and Dorn that should have alerted them of Evans's precarious circumstances. They are responsible for the distribution of meals, medication, commissary, and most importantly, inmate

The amended information is locate in paragraph 12.

accountability;[1] all of which took place while Evans remained locked in this room. Evans believes that these standards of protocol should have been met to inform officers Sonntag and Dorn that Evans was still locked in this room for an unreasonably long period of time.

14. Officer Warner displayed negligence by failing to act when equipped with the knowledge of Evans' being in danger after hearing Evans yelling for help. This is in direct opposition to his responsibility as an officer [2]

15. Defendant, Sgt. Nathan J. Wolf displayed negligence by failing to have Evans transferred back to his cell in a reasonable time exposing him to a harmful environment. His failure to comply with proper procedure regarding escorting inmates back to their cells caused serious medical issues to Evans. Evans suffered great pain and suffering, physical injury, personal injury and emotional distress. It is Sgt. Wolf's personal responsibility to do hourly checks on inmates' well-being in the Restricted Housing Unit (RHU). At approximately 2:30 p.m., Wolf observed Evans in the locked room meeting with his attorney. It is also his personal responsibility to delegate officers to transfer inmates to and from their cells for attorney visits. Wolf failed in his duty to ensure that Evans was returned to his cell safe and secure. Additionally, there were several other protocols available to Sgt. Wolf that should have alerted him of Evans's precarious circumstances. He was responsible for the distribution of meals, medication, commissary, and most importantly, inmate accountability; all of which took place while Evans remained locked in this room. Evans believes that these standards of protocol should have been met to inform Sgt. Wolf that Evans was still locked in this room for an unreasonably long period of time.

16. Defendant, Correctional Sgt. Bobby Blake failed to notify staff that the plaintiff's attorney visit had ended and plaintiff was ready to be escorted back to his cell, thereby displaying negligence.

17. At no time was Evans unruly or combative. He was completely cooperative at all times and complied with all orders and instructions given by DOC staff.

18. As a consequence of the gross negligence and abuse of authority detailed above, Evans sustained the damages hereinbefore alleged. As a result of this trauma, Evans continues

---

[1] Officers are required to conduct an "inmate count" throughout the day. This is done for safety and security of the prison and to insure that inmates are where they are supposed to be at all times.

[2] This Attorney visit was held during the winter season. Due to the malfunctioning, this ventilation system was blowing out cold air when it should have been blowing heat.

The amended information is locate in paragraph 12.

to suffer great pain and suffering, physical injury, personal injury and emotional distress. As a result of the hereinbefore incident, Evans has been advised by several medical experts that it is likely that he will suffer from a lifetime of arthritis in his right.

19. The hereinabove described actions, engaged in under color of state authority by the defendants, the breach of duty resulted in serious physical and emotional injury and damages.

20. The breach of duty proximately caused those damages.

## IV. ADMINISTRATIVE REMEDIES

Plaintiff Evans attempted to address these issues administratively by filing an Inmate Complaint and disagrees with disposition of the Waupun Correctional Institution. Evans has exhausted all available options at the administrative level.

## V. RELIEF WANTED

WHEREFORE, the plaintiff requests that this court grant the following relief:

a. Award compensatory damages for plaintiffs' physical and emotional injuries, and punitive damages against each defendant.
b. Plaintiff request a trail by juror on all complaint
c. Grant plaintiff such other relief as it may appear plaintiff is entitled to

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated this day  14  of  APRIL , 20 20 .

Tommie E. Evans, Pro Se.
P.O. Box 1000
Boscobel, WI. 53805

The amended information is locate in paragraph 12.